IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ARNOLD D. OLDS,
      Plaintiff,

vs.                        Case No. 5:09cv319/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

      On April 11, 2003, Plaintiff filed an application for SSI, in which he alleged disability beginning February 4, 2000 (Tr. 16).[1] His application was denied initially and on reconsideration

---

[1] All references to "Tr." in this Report refer to the transcript of Social Security Administration record filed February 8, 2010 (*see* Doc. 15). Moreover, the page numbers refer to the page number found in the upper, right-hand corner of each page of the transcript, not the page numbers assigned by the court's electronic docketing system.

(*id.*).  Following a hearing, an administrative law judge ("ALJ") issued a decision in which he found Plaintiff "not disabled" through June 11, 2007, the date of his decision (Tr. 16–27).[2]  On September 22, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 6–8).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.    FINDINGS OF THE ALJ

In his written decision the ALJ made several findings relative to the issues raised in this appeal (Tr. 16–27):

1)  Plaintiff has not engaged in substantial gainful activity since February 4, 2000, the date he alleges he became disabled.

2)  Plaintiff has the following severe impairments: degenerative disc disease ("DDD") of the cervical spine and lumbar spine.

3)  Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)  Plaintiff has the residual functional capacity ("RFC") to stand, walk, and sit about six hours in an eight-hour workday, as long as he can alternate between sitting and standing; he can lift up to ten pounds frequently; he can never climb ropes, ladders or scaffolds; and he must avoid concentrated exposure to unusual work place hazards.[3]

5)  Plaintiff is able to perform his past relevant work as a computer programmer or, alternatively, other sedentary work available in the national and regional economies, including data exam clerk and data entry clerk.  Plaintiff, therefore, has not been under a disability, as defined in the Act, since April 11, 2003.

---

[2] Thus, the time frame most relevant to Plaintiff's claim for SSI is April 11, 2003 (the date he applied for benefits) through June 11, 2007 (the date the ALJ issued his decision), although Plaintiff alleges disability commencing in February 2000.  *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

[3] Based on this RFC, the ALJ found, Plaintiff is able "to perform a range of sedentary work on a sustained basis" (Tr. 22).  As defined in the Regulations:  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a)

III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S PERSONAL HISTORY, TESTIMONY, AND MEDICAL HISTORY

A.    Plaintiff's Personal History and Testimony

Plaintiff testified at his hearing before the ALJ, held March 26, 2007, that he was injured in a mountain-biking accident in 1992, which resulted in two ruptured discs in his neck, two fractured vertebra, and a dislocated hip (Tr. 592, 620).  Plaintiff did not obtain an MRI (magnetic resonance

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

imaging) until 1995 or 1996, when he first realized he could receive testing and treatment through the Veterans Administration ("VA") (*see* Tr. 621). Thereafter, in June 1998, Plaintiff underwent a laminectomy of L4-5, S1, but he testified that the laminectomy separated and he was in need of reparative surgery (Tr. 597). Plaintiff also noted that in late January 2007, he underwent surgery to replace ruptured discs in his neck (he described his surgery as a "plug," in which a cadaver bone was used to replace the discs, and he noted that this experimental surgery "saved" him from undergoing additional surgeries because use of the cadaver bone eliminated the need to extract bone from his hip) (Tr. 596, 606; *see also* Tr. 470). Plaintiff stated that the plug "worked" and resulted in "a little" improvement, although afterward he experienced a sensation similar to that of "hitting a funny bone" (Tr. 606). Plaintiff further testified that he has two herniated discs in his thoracic spine and is scheduled to undergo an MRI in April 2007 (*see* Tr. 596–97). He stated that although the "funny bone" sensation in his neck has lessened, it is "affected" by the herniated discs, which also are causing back pain and "tingling" nerves in his arms (Tr. 606–07).

Plaintiff testified that he takes cyclobenzaprine for muscle spasms, Lortab 7.5 for pain, terazosin for his prostate, amitriptyline for sleeping difficulties, and ranitidine and (apparently) omeprazole for acid reflux (*see* Tr. 598–99). Plaintiff stated that the Lortab is "working" and that overall his medications help him, although he stated he does not drive often due to the "influence" of his medications (Tr. 609)

With regard to activities of daily living, Plaintiff stated he does "as little as possible" and mainly watches television, feeds a pet bird, and uses his computer (Tr. 599–600). Plaintiff noted that his "hobby" is computers and that he rebuilds computers for a children's charitable organization (Tr. 600). He indicated that donated computers and parts are sometimes dropped off at his house, but at other times he picks them up (*id.*).[5] Plaintiff stated he is not "suppose[d] to lift any more than 10 pounds," and he noted that he can indeed lift ten pounds as long as he does not have to bend to the floor (Tr. 600, 617). In other words, Plaintiff acknowledges that he can lift ten pounds from a table or (presumably) higher (*see* Tr. 617). Plaintiff also stated he cannot walk more than thirty minutes or sit more than one hour and, per "Dr. Lee in San Jose, California," he is not "allowed to

---

[5] The ALJ asked Plaintiff why he did not rebuild computers for a living, and Plaintiff responded that he did not have $250 to obtain paperwork necessary to start a business (*see* Tr. 601–02 ).

stand" more than one hour (Tr. 600). Plaintiff noted he tried to work in 2003 or 2004, but the job he obtained (that is, "testing [computer] monitors and testing towers and desktops") required that he stand on a concrete floor up to twelve hours a day, and he was not able to do so; he has not worked since that job (Tr. 605). Plaintiff testified, however, that he believes he is capable of performing a "part stand, part sit job," as long as he can stand at will (*see* Tr. 617–18).

Finally, Plaintiff testified regarding pain and other symptoms, noting that he has pain each day and takes medication daily for pain, stiffness, and muscle spasms (Tr. 603–04). He also takes medication to help him sleep, which works within five to ten minutes and permits sleep for eight to ten hours (Tr. 603). Plaintiff noted that he obtains his medications through the VA and takes them as prescribed (Tr. 604).[6]

B.    Plaintiff's Medical History[7]

On July 17, 1998, Plaintiff underwent a right L5-S1 hemilaminotomy and discectomy (Tr. 132–38). On or about December 1, 1998, Plaintiff presented to the VA Hospital with complaints of postoperative spasms, pain, and stiffness along the right hip and leg (Tr. 123). He was assessed with right paraspinous spasm and lumbar disc disease with chronic pain (*id.*).

On August 22, 2000, Plaintiff presented to the San Jose Medical Center with complaints of right leg pain after slipping and falling (Tr. 141). Emergency room x-rays indicated distal and proximal tibia (ankle) fractures (Tr. 142). Two days later Plaintiff underwent an intramedullary rodding of the right tibia (Tr. 125).

On April 7, 2003, Plaintiff presented to the VA Hospital with complaints of back pain and rated his pain as an "eight" on a ten-point scale (Tr. 284–86). Plaintiff was assessed with chronic back pain, prescribed pain medications, and directed to return for follow-up in six months (Tr. 286). On August 27, 2003, Plaintiff returned with complaints of constant right shoulder pain and rated the pain as a "nine" on a ten-point scale (Tr. 281–82). Right shoulder images were obtained the same

---

[6] Plaintiff initially appeared for a hearing before an ALJ on March 13, 2006, but the hearing did not go forward (for reasons not relevant here). However, the ALJ and Plaintiff engaged in some dialogue, during which—in relevant part—Plaintiff stated he had been "to school for the last four years" (Tr. 584).

[7] Plaintiff's relevant medical history is detailed in the ALJ's opinion (Tr. 19–22, 24), as well as Plaintiff's memorandum in support of his complaint (Doc. 17 at 2–5, 13–14) and the Commissioner's response thereto (Doc. 21 at 2–6), and it need not be fully repeated here. The following summary, therefore, is merely a brief overview of Plaintiff's medical history. Additional details are provided as necessary in the "Discussion" section of this Report, *infra*.

day and revealed completely normal findings (Tr. 257–58).[8]  Cervical spine images were also obtained and revealed only "minor" abnormalities (i.e., "slight" disc space narrowing, "minimal" or "mild" spurring, and "mild" spondylosis) (Tr. 258–59).

Lumbar spine images were obtained on November 10, 2003, which revealed some disc space narrowing, minor marginal osteophytes, slight retrolisthesis, and some end plate sclerosis with marginal spurring, but pedicles were intact and sacroiliac joints were preserved (Tr. 257).  Overall, Plaintiff's lumbar spine condition was described as a "minor abnormality" (*id*.).  The results of thoracic spine imaging the same day were generally the same (*see* Tr. 256–57).

In January 2004, images of Plaintiff's lumbar spine resulted in diagnoses of post surgical changes, DDD at L5-S1, and "Grade I retrolisthesis, L5 on S1" (Tr. 256, 321).

Plaintiff underwent a CT scan of the lumbar spine on September 15, 2005 (Tr. 325).  The radiologist assessed Plaintiff with postoperative and degenerative changes, a moderately large left and central disc protrusion at L4-5 with resultant severe left neural foraminal narrowing ("NFN"), and severe disc degenerative changes at L5-S1 with resultant "moderately severe" bilateral NFN (Tr. 325–26).  Slightly more than one month later Plaintiff underwent an MRI of the lumbar spine (Tr. 276), and on June 30, 2006, another MRI of the lumbar spine (Tr. 166), as well as an MRI of the thoracic spine (Tr. 164).  The October 2005 lumbar spine MRI resulted in diagnoses of "referred/radicular pain left hip greater than the right" and "status post L4-5 laminectomy in 1998" (Tr. 276).  The June 2006 lumbar and thoracic MRIs resulted in diagnoses of "status post mountain bike accident" in 1990 and "neck and low back pain-discectomy at L4-5" in 1998, although the thoracic spine was described as "normal" (Tr. 164, 166, 411).  Additionally, in or about late April 2006, cervical spine images revealed an "essentially normal" cervical spine, as only minor spondylosis was observed (Tr. 409, 411).

On January 29, 2007, Plaintiff presented to the VA hospital for a preoperative evaluation of his neck (Tr. 476).  The physician (whose name is not apparent) noted that Plaintiff continued to have back pain, but his primary complaint concerned neck pain radiating to the left upper extremity

---

[8] The precise nature of the shoulder imaging (e.g., MRI, x-ray, computerized tomography ("CT") scan) is not apparent from the record.  And the nature of other imaging in the record is likewise unclear; thus, the general terms "imaging" or "images" are used in this Report unless the nature of the imaging is clear, in which case it will be identified.

(*id.*). A physical examination revealed full upper and lower extremity strength (Tr. 477). The physician noted that Plaintiff would undergo an MRI the next day, and if it confirmed the need for surgery a cervical decompression and fusion would be performed (*id.*). When Plaintiff returned the next day a cervical spine MRI was obtained, and it revealed "shrinking" of the disc herniation at C6-7, C7-T1, as compared to the MRI obtained in mid-2006 (Tr. 471). Dr. Narayana Swamy extensively discussed non-surgical options with Plaintiff, but Plaintiff elected to proceed to surgery nevertheless (*id.*). Thus, on January 30, 2007, an anterolateral cervical discectomy on C5-6 and C6-7 was performed (the experimental surgery Plaintiff described to the ALJ) (Tr. 487). Plaintiff was discharged within two days and provided with a bus ticket to travel home[9] (Tr. 461, 521).

C.      Other Information Within Plaintiff's Claim File

Two Physical RFC Assessments were completed in June 2003 by non-examining agency physicians (Tr. 145–52; Tr. 153–60). Both physicians opined, in relevant part, that Plaintiff could lift or carry ten pounds frequently and twenty pounds occasionally, and he could stand, sit, or walk six hours in an eight-hour workday; both also opined that Plaintiff had no limitations in his ability to push or pull (*id.*). One physician opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 147–49). But the other physician opined that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl due to back pain and that Plaintiff should avoid concentrated exposure to environmental hazards such as machinery or heights (Tr. 155–57).

V.      DISCUSSION

Plaintiff raises three issues in the instant appeal, which the undersigned has rearranged for ease of discussion. Specifically, Plaintiff contends the ALJ erred in failing to properly consider his subjective complaints of pain and other symptoms, in evaluating the opinion of Peter C. Imber, a treating physician with the VA, and by concluding that Plaintiff could perform his past work as a computer programmer (Doc. 17 at 11).

A.      Eleventh Circuit Pain Standard

---

[9] The VA records indicate that Plaintiff, who resides in Bonifay, Florida, "rode the Biloxi [Mississippi] van to the hospital for [his] surgery" (Tr. 461, 521), and a social worker assisted him with obtaining a bus ticket for his return trip to Florida on February 1, 2001 (*see* Tr. 461).

Pain and other subjective complaints are treated by the Regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." The Eleventh Circuit has articulated a three-part pain standard, sometimes referred to as the Hand test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986) (originally adopting the three-part pain standard). The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also*, *e.g.*, Ogranaja v. Comm'r of Soc. Sec. Admin., 186 Fed. Appx. 848, 2006 WL 1526062, at *3 (11th Cir. 2006) (quoting Wilson, 284 F.3d at 1225); Elam, 921 F.2d at 1214–15 (illuminating Eleventh Circuit's history of the pain standard).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[10] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether "the quantum of [symptoms a claimant]

---

[10] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

allege[s] [is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, in considering Plaintiff's subjective complaints, the ALJ articulated the correct pain standard (*see* Tr. 23). The ALJ also specifically mentioned 20 C.F.R. § 416.929, "which contains the same language regrading the subjective pain testimony that [the Eleventh Circuit] interpreted when initially establishing its three-part pain standard." Wilson, 284 F.3d at 1226 (11th Cir. 2002) (referring to parallel DIB provision and citing Elam, 921 F.2d at 1214–15). Thereafter, the ALJ concluded that "there is evidence of a combination of underlying impairments that could reasonably be expected to cause some degree of the symptomatology alleged by [Plaintiff]; however, the severity of the symptoms and the degree of the limitations alleged are simply not supported by the objective medical evidence of record" (Tr. 24). In support the ALJ noted that: 1) Plaintiff's daily activities, ability to care for his personal needs, and physical examination results are not compatible with the limitations alleged by Plaintiff (i.e., those limitations that, if believed, would render Plaintiff totally disabled and incapable of performing any work); 2) Plaintiff has not required extended hospitalizations; 3) the evidence, including Plaintiff's own statements, indicates that Plaintiff can lift ten pounds and work if he is permitted to alternate between sitting, standing, and walking; 4) Plaintiff does not suffer adverse side effects from his medications; and 5) Plaintiff was able to attend computer classes, and his treating physician approved that activity (*id*.).

Plaintiff generally contends the foregoing credibility determination is erroneous, and in support Plaintiff appears to assert five sub-claims. Specifically, Plaintiff asserts that the ALJ erred: 1) by relying solely on the lack of objective medical evidence to discount his complaints; 2) by concluding that the objective medical evidence did not support his complaints; 3) by failing to adequately and specifically articulate reasons for discounting his complaints; 4) by discounting his complaints for reasons that are not supported by the record; and 5) by failing to conclude that Plaintiff's consistent complaints of severe pain, as documented in the VA treatment records, substantiate the existence of the severe pain he alleges (*see* Doc. 17 at 12–14). The undersigned thus considers each sub-claim raised by Plaintiff.

First, it is clear that Plaintiff's first and third sub-claims are without merit. Although the ALJ began his discussion of Plaintiff's credibility with the general statement that the severity and degree of the symptoms and limitations alleged by Plaintiff "are simply not supported by the objective medical evidence of record," thereafter he cited additional and clearly-articulated reasons for discounting Plaintiff's complaints (as listed, *supra*; *see also* Tr. 24).

As to Plaintiff's second sub-claim (that is, that the ALJ erroneously determined that objective medical evidence does not support the severity or degree of the symptoms alleged by Plaintiff), the undersigned concludes that it too must fail. Initially, the ALJ did not err in considering this factor. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); *see also* Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted). Moreover, the ALJ's finding is supported by substantial evidence on the records as whole, including the following evidence: 1) right shoulder images obtained in August 2003 were normal (Tr. 257–58); 2) cervical spine images obtained in August 2003 revealed only "minor abnormalities" (Tr. 258–59), in or about April 2006 were deemed "essentially normal" (they revealed only "slight narrowing at the C5-6 disc space with minor marginal spurring") (Tr. 409–11), and in January 2007 revealed "shrinking" of the disc herniation (Tr. 471);[11] and 3) thoracic spine images obtained in November 2003 revealed only minimal space narrowing and minor spurring but otherwise were deemed normal (Tr. 256–57), and in June 2006 revealed some disc degeneration, mild spondylosis, a "tiny" disc protrusion or developing disc extrusion, "mildly" bulging disc material, and what "appear[ed] to be moderate foraminal stenosis" (Tr. 164–65), although VA physicians who reviewed the same thoracic imaging results from June 2006 (or results of imaging taken at or about the same time) characterized the thoracic spine as "normal" and "essentially normal" (*see* Tr. 411, 479). While lumbar spine imaging arguably

---

[11] Although Plaintiff asserts that cervical imaging revealed "degenerative formainal [sic] stenosis bilaterally at C4-6 and C6-7" (*see* Doc. 17 at 13 (citing Tr. 164–65)), the transcript pages he cites in support are results of a thoracic MRI (which revealed moderate foraminal stenosis at T11-12) (*see* Tr. 164–65). The undersigned notes that Dr. Swamy reviewed cervical spine images and noted disc degeneration at C6-7 and a disc fragment at the same area (*see* Tr. 479).

documented more significant issues,[12] Dr. Swamy—a neurosurgeon to whom Plaintiff was referred by Dr. Imber—stated in November 2006 that he reviewed the results of Plaintiff's lumbar MRIs and did "not see any impressive focal dis[c] herniation or stenosis," although he observed some disc degeneration at L4-5 and L5-S1 (Tr. 478–79).

The ALJ acknowledged the results of the various MRIs and other imaging (*see* Tr. 20–21), and based in part on those results he found that certain impairments were "severe" (i.e., DDD of the cervical spine and lumbar spine). He also found that Plaintiff's DDD could reasonably be expected to cause <u>some</u> of the symptoms alleged by Plaintiff, but he concluded that the <u>extent</u> of the symptoms alleged is not supported by the objective evidence. The ALJ did not err in so concluding because, as detailed *supra*, many of the objective tests resulted in minimal findings (as did physical examinations, as discussed *infra*). Moreover, the lack of supporting objective evidence was but one of many reasons the ALJ considered in discounting Plaintiff's complaints. When all the reasons are considered together, it is evident that the record fully supports the ALJ's credibility finding.

Thus, turning to Plaintiff's fourth sub-claim (that is, that the ALJ erred by relying on reasons for discounting his complaints that are not supported by substantial evidence), the undersigned again concludes that Plaintiff has not established entitlement to relief. As demonstrated next, each of the ALJ's clearly-articulated reasons for discounting Plaintiff's complaints (to the extent alleged) are fully supported by the record:

● Physical Examinations — The ALJ stated that Plaintiff's "[p]hysical examination findings . . . are clearly not compatible with evidence one would expect of someone" who is disabled (Tr. 24). As the ALJ noted, Plaintiff was examined by Dr. Swamy on November 6, 2006 (Tr. 21, 478). In relevant part, Dr. Swamy noted that Plaintiff's straight leg raise test was negative and that Plaintiff had normal muscle tone and bulk, with no wasting and no "convincing weakness" (Tr. 479). Examination of the cervical spine revealed no muscle spasm or tenderness, and examination of the neck revealed normal range of motion (*id*.). Additionally, Plaintiff's deep tendon reflexes were "brisk bilaterally" in both the upper and lower extremities (*id*.). Plaintiff had no radiating pain from the neck into the arm and no tingling or numbness in his fingers, even though he reported a "funny

---

[12] For example, lumbar spine imaging from September 2005 revealed a disc protrusion at L4-5 and degenerative changes at L5-S1 with NFN (Tr. 326), and imaging from June 2006 revealed moderate disc disease, moderate to marked foraminal stenosis bilaterally, and a mild midline disc bulge (Tr. 166–67). *See also* Section IV.B, supra.

bone sensation" in the elbows (Tr. 478). Similarly, Dr. Swamy noted, Plaintiff reported pain in the back of his calf and thigh, but no radiation into the foot or toes as would be "typical" (*id*.). Dr. Swamy opined that Plaintiff reported "quite diffuse and bizarre" symptoms and displayed a "grossly exaggerated pain response" (Tr. 479–80).

Additionally, just prior to Plaintiff's cervical discectomy in January 2007, an examination revealed full and "excellent" upper and lower extremity strength and "brisk" reflexes (described as "3+/4") in all upper and lower extremities, and Plaintiff was able to walk on his heels and toes, although he reported neck pain and left elbow pain (Tr. 461–62, 477).[13] And just after his surgery Plaintiff's strength was "5/5" in all extremities, and he was "fully ambulatory" (*see* Tr. 455, 458).

- Plaintiff's Ability to Care for Personal Needs and Daily Activities and
- Computer Classes and Physician's Opinion Regarding Same —

The ALJ noted that Plaintiff's impairments do not (or did not) prevent him from caring for his personal needs or performing daily activities, including repairing computers, engaging in his computer hobby, and— with Dr. Imber's approval— attending school (Tr. 24). These findings are also supported by the record. For example, Plaintiff completed a form in connection with his claim for benefits, on which he described his ability to perform "usual daily activities" and personal care (Tr. 110–12). Although Plaintiff reported some difficulty with dressing and putting on shoes, he reported no difficulty with bathing, caring for his hair, cooking, preparing meals, housecleaning, doing laundry, shopping, driving, participating in social activities, or performing hobbies or home maintenance (Tr. 111–12). Moreover, VA records from April 2003 reflect Plaintiff's report that he has "no difficulty performing ADLs [activities of daily living]" (Tr. 249–50). Additionally, as discussed *supra*, Plaintiff is able to rebuild computers and otherwise engage in his computer hobby.

The record also establishes, as the ALJ found, that Plaintiff took computer classes for years during the time frame relevant to this appeal (*see, e.g.*, Tr. 478 (in November 2006, Plaintiff told Dr. Swamy that he had studied computers for four years); Tr. 584 (in March 2006, Plaintiff told the ALJ that he had been "to school for the last four years"); Tr. 195 (in August 2005, Plaintiff told Dr. Imber he was a senior in "computer tech school" and scheduled to graduate in December); Tr. 206 (in November 2004, Plaintiff reported he had nearly completed his computer training classes); Tr. 217

---

[13] Plaintiff refused, without explanation, to walk on his heels or toes when examined by Dr. Swamy (*see* Tr. 479).

(in April 2004, Plaintiff noted he sat "in hard chairs all day in class")).  Likewise, the record establishes that Dr. Imber indeed opined that Plaintiff could participate in such classroom activities (Tr. 25, 418; *see also* Tr. 206).  Thus, the ALJ did not err in concluding that Plaintiff's daily activities—as established by the record—are inconsistent with his allegations of pain and other disabling symptoms, as is Dr. Imber's opinion that Plaintiff could attend school.

● Lack of Extended Hospitalizations — The undersigned has found no evidence in the record—and Plaintiff had pointed the court to none—demonstrating that he was ever hospitalized on a long-term basis.

● Plaintiff's Statements and Inconsistencies in the Record — The record is replete with evidence indicating that Plaintiff is capable of performing work, including the work identified by the ALJ as work Plaintiff can perform.  For example, Plaintiff's own statements indicate that he can lift ten pounds <u>and</u> work if he is permitted to alternate between sitting and standing (Tr. 24, 617–18).[14]  The ALJ included these abilities in the RFC and presented them to a vocational expert ("VE") in a hypothetical question, following which the VE opined that Plaintiff could perform work as a computer programmer, data exam clerk, and data entry clerk (Tr. 626–29).  Additionally, Plaintiff testified that he does not repair computers for a living because—and only because—he cannot afford paperwork necessary to start a business.  Similarly, Plaintiff reported to Dr. Swamy that he "studied four years of computer [sic] but [] has not found a job and so he is not doing any kind of work" (Tr. 478), and Plaintiff told Dr. Imber in August 2005 about a "potential job offer" (Tr. 195).  Thus, it is evident that Plaintiff believes he can work and, further, that he is not working only because he cannot afford the start-up costs associated with self-employment or because he has not yet found a job in the computer field.[15]

_____

[14] Plaintiff testified that he could only lift ten pounds (Tr. 600), but he reported on three different disability reports that he could lift up to twenty pounds (*see* Tr. 77, 95, 112).

[15] While not specifically mentioned by the ALJ, the undersigned has noted additional inconsistencies in the record, including the following: 1) Plaintiff testified he sleeps eight to ten hours a night, but on disability report he wrote that his back pain keeps him awake most of the night (Tr. 110, 603); 2) in August 2005, Dr. Imber noted that Plaintiff initially reported that he had suffered from back pain since his back surgery but then admitted the pain was more recent (specifically, Dr. Imber's notes reflect, "while [Plaintiff] initially describes [pain] since surgery on back, [] I then pointed out notes to [the] contrary from Palo Alto [that I] reviewed today," and Plaintiff then stated, "well, okay, recently" (Tr. 195)); 3) Plaintiff testified that he cannot sit more than an hour, but his travel by bus to and from his surgery in Mississippi (with the VA's approval) is seemingly inconsistent with this reported limitation, as is Plaintiff's attending

●     Medication Side Effects — Plaintiff listed no side effects on a disability form dated March 1, 2003 (Tr. 82). On a later disability form Plaintiff indicated that his medications make him drowsy and sleepy (Tr. 100) and, as noted *supra*, Plaintiff testified that he limits his driving due to the "influence" of his medications. However, the undersigned has found no complaints of medication side effects in Plaintiff's medical records, other than one report by Plaintiff that Motrin causes an allergic rash (*see, e.g.,* Tr. 407).[16] When a claimant has not complained of medication side effects, and the record contains no complaints of side effects to treating physicians, there is substantial evidence to support a finding that side effects are not a significant problem. *See* Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990). *See also* Holley v. Chater, 931 F. Supp. 840, 850 (S.D. Fla. 1996) (when the sole evidence of side effects is a claimant's testimony that medication makes him "dizzy and drowsy," such "scant evidence" is insufficient to support a finding of disability). Furthermore, Dr. Imber specifically opined that Plaintiff's medications do not "prevent" participation in work activities, although they impose some limitations (Tr. 418).

In addition to Dr. Imber's opinion, other evidence supports the ALJ's finding that Plaintiff suffered no disabling medication side effects. For example, on many occasions Plaintiff sought additional or stronger medications from his physicians (*see, e.g.*, Tr. 282, 355, 357, 367, 480). If Plaintiff experienced bothersome side effects it is unlikely he would have asked for stronger medications or, similarly, asked for stronger medications without mentioning any side effects to his physician. Moreover, Plaintiff's medications obviously did not interfere with his ability to attend school or perform many and varied daily activities, as discussed *supra*. Therefore, the ALJ did not err in finding that the side effects of Plaintiff's medications do not preclude work, and to the extent Plaintiff's testimony suggests they do, the ALJ did not err in discounting such testimony.

Thus, because the ALJ clearly articulated his reasons for finding Plaintiff less than fully credible, and the reasons cited are substantially supported by the record, Plaintiff is not entitled to

---

computer classes during the time frame relevant to this appeal, and 4) Plaintiff often advised his physicians that his medications were ineffective, but in a pain questionnaire dated April 14, 2003, Plaintiff indicated that "[a]s long [as he took] them they work wonderful" (Tr. 111).

[16] The medical records are quite lengthy in this case, so it is possible that a complaint or report of side effects was overlooked. However, Plaintiff has not pointed the court to any such complaint in his medical records; nor has Plaintiff alleged that he made any such complaint.

relief on his fourth sub-claim.  *See* Foote, 67 F.3d at1562 (a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court); MacGregor, 786 F.2d at 1054 (same).

A final contention, however, must be considered.  As his fifth sub-claim Plaintiff alleges that his repeated complaints of severe pain substantiate the existence of severe and disabling pain, and the ALJ erred in concluding otherwise.  This claim, too, is unavailing.  Although Plaintiff may have repeatedly reported severe pain to his physicians, this does not establish that his reports were genuine.  Indeed, the ALJ properly found that Plaintiff's complaints were not fully credible, which finding includes complaints made by Plaintiff to his physicians (*see, e.g.*, Tr. 21 (ALJ's reference to Plaintiff's report to a VA physician of "constant back pain, even when [] lying down")).  The ALJ's well-supported credibility finding, alone, is sufficient to deny Plaintiff relief on this sub-claim.  The undersigned notes, however, that a conclusion opposite to the one asserted by Plaintiff may just as easily be drawn, that is, that Plaintiff repeatedly exaggerated his pain in an effort to obtain narcotics[17] or did so in an effort to present his condition as worse that it actually was in order obtain disability benefits.[18]  It was within the ALJ's realm of judging to view the evidence in the manner he did, and Plaintiff's alternate view of the evidence does not undermine the ALJ's conclusions.  Thus, the ALJ did not err, and Plaintiff is not entitled to relief on this claim.

B.      Evaluation of the Opinions of Dr. Imber, a Treating Physician with the VA

On March 5, 2007, Dr. Imber completed a one-page form that appears to have been submitted to him by Plaintiff's counsel (Tr. 550).  On the form Dr. Imber opined that Plaintiff is disabled indefinitely and will "never return back to work" (Tr. 550).  Dr. Imber also opined that Plaintiff has been disabled since March 1, 2001, and that Plaintiff's disability is based on the

---

[17] As noted *supra*, Plaintiff often requested additional or stronger pain medications.  The record also reflects, however, that Plaintiff has a history of substance abuse (*see, e.g.*, Tr. 118–19).  His requests, therefore, must have been considered with caution or hesitation.  Indeed, Plaintiff was warned by his physicians that he should not obtain narcotics from more than one provider, overuse medications that are prescribed to him, or use non-prescribed medications (*see, e.g.*, Tr. 208, 284).  Plaintiff was also reprimanded after reporting that he occasionally used his girlfriend's phenobarbital (Tr. 210).

[18] Plaintiff reported to a social worker that an earlier application for SSI had been denied (Tr. 130).  The social worker noted that Plaintiff was frustrated, "pacing the hallway," and expressing concern regarding his finances (*id.*).  She also noted Plaintiff's statement that, "I have to be paralyzed before I [can] have any [SSI money]" (*id.*).

diagnoses of "herniated intervertebral discs [and] spinal stenosis" (*id.*). The ALJ rejected this opinion noting that it is an opinion on the "ultimate issue," which is reserved to the Commissioner (Tr. 24). The ALJ also found that the opinion is contrary to the evidence, including Plaintiff's own statement that he can work if given the option to sit or stand at will (*id.*). Additionally, the ALJ noted that no other physician opined that Plaintiff was disabled or otherwise unable to work.

As this court is well aware, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis, 125 F.3d at 1439–41; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See* Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

It is evident here that the ALJ properly considered and discounted Dr. Imber's opinion. Initially, there can be no doubt that Dr. Imber's opinion is conclusory. *See* Phillips, 357 F.3d at 1232; 20 C.F.R § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight" the opinion is given.). As previously discussed, other than the diagnoses listed by Dr. Imber, no explanation is provided for Plaintiff's alleged "disability" or its onset date of March 1, 2001. Moreover, as the ALJ correctly noted, an opinion on the "ultimate issue" need not be accepted by the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (stating that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion); 20 C.F.R. § 404.1527(e)(3) (the Commissioner "will not give any

special significance to the source" of an opinion on issues reserved for the Commissioner); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Indeed, to require the Commissioner to accept as controlling a statement that a patient is or is not disabled would require the Commissioner to credit the physician not only with knowledge of the patient's physical condition, but also with an understanding of the nuances of how the regulations analyze physical limitations with respect to job experience, age, education, transferability of skills, the definitions of the various levels of exertion relevant to types of work, and similar matters. And here, Dr. Imber appears to have opined that Plaintiff is "disabled" based only on Plaintiff's diagnoses, which demonstrates a lack of familiarity with the Commissioner's regulations. *See, e.g.*, Salles v. Comm'r of Soc. Sec. Admin., 229 Fed. Appx. 140, 145 (3d Cir. 2007) (diagnoses alone, including diagnosis of depression, insufficient to establish severity at step two).

The ALJ also considered that Dr. Imber's opinion is contrary to other evidence in the record. As previously noted, Plaintiff's own statements and ability to attend school (with Dr. Imber's approval) are inconsistent with Dr. Imber's opinion that Plaintiff is totally precluded from all work, even sedentary work. Moreover, Plaintiff was advised by Dr. Imber to engage in moderate exercise, such as walking for thirty or forty minutes and riding his bike for forty minutes (Tr. 193, 210). The advice to engage in such physical activity certainly undermines Dr. Imber's opinion that Plaintiff is totally disabled. Furthermore, on February 21, 2006, Dr. Imber opined that for the next twelve months Plaintiff should not stand or sit for more than thirty minutes or lift (Tr. 418). He also described Plaintiff's condition as "temporary" (*id.*). These opinions are clearly inconsistent with the opinion Dr. Imber rendered in March 2007 that Plaintiff is totally disabled and has been since March 2001. Thus, the ALJ properly found that the record is inconsistent with Dr. Imber's March 2007 opinion, and the ALJ properly considered this factor in evaluating the opinion. Phillips, 357 F.3d at 1240–41; 20 C.F.R. § 404.1527(d)(3) (evidence used by medical source to formulate opinion and consistency with record as a whole are factors the ALJ may consider).

Lastly, the ALJ noted that no physician other than Dr. Imber opined that Plaintiff was disabled or otherwise unable to work, a finding that is supported by the record. Likewise, no other

physician imposed physical limitations or work restrictions on Plaintiff (other than for a limited time following surgery). Thus, because the ALJ articulated the inconsistencies on which he relied in discrediting Dr. Imber's opinion regarding Plaintiff's ability to work, and because the ALJ's reasons are supported by substantial evidence on the record as a whole, the ALJ's finding should not be disturbed.

In related arguments, Plaintiff contends the ALJ erroneously assigned determinative weight to the opinions of the non-examining agency physicians (hereinafter "the opinions") and, in an argument seemingly inconsistent with the first, asserts the ALJ erred in failing to state the weight he assigned to the opinions (Doc. 17 at 18). Plaintiff also contends the opinions are too old to be probative (*id.*). The undersigned concludes that the ALJ did not commit any error in considering the opinions.

A review of the record and the ALJ's opinion reveals that he did not assign <u>determinative</u> weight to the opinions. First, the ALJ stated only that the opinions <u>support</u> his overall determination that Plaintiff is not disabled; he did not state he was adopting the opinions in full (*see* Tr. 24). Second, the record demonstrates that the opinions were not adopted in full. For example, the ALJ limited Plaintiff to lifting only ten pounds, but the agency physicians opined that Plaintiff is able lift up to twenty pounds; the ALJ also determined that Plaintiff requires a sit/stand option, but neither agency physician imposed such a restriction. Thus, it is clear that the ALJ relied on other evidence in determining Plaintiff's RFC. *See* <u>Wilkinson v. Comm'r of Soc. Sec. Admin.</u>, 289 Fed. Appx. 384, 386 (11th Cir. 2008) (ALJ did not give undue weight to opinion of non-examining state agency physician because he did not rely <u>solely</u> on that opinion; rather, he considered other evidence such as claimant's own reports and testimony).

Additionally, even though the ALJ did not precisely state the amount of weight accorded to the opinions, any error in this regard is harmless. First, the opinions were rendered relatively early in the time frame relevant to Plaintiff's claim and thus could not have been based on Plaintiff's more recent medical treatment. It was therefore reasonable for the ALJ to simply note that the opinions provide additional support for his findings, although they are not dispositive. Moreover, the ALJ did not reject any opinion of the agency physicians that was favorable to Plaintiff (as previously mentioned, the RFC determined by the ALJ is more restrictive than the opinions). Stated another

way, the opinions of the agency physicians do not conflict with the ALJ's conclusion that Plaintiff can perform sedentary work. Thus, the ALJ did not err in failing to further specify the weight he gave the opinions. *See* Howard v. Barnhart, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened."). Similarly, Plaintiff's testimony concerning his daily activities and abilities does not suggest he cannot perform sedentary work, with the additional restrictions identified by the ALJ and included in the RFC.

Finally, to the extent Plaintiff contends the ALJ's failure to specifically state the weight he assigned to the opinions, requires the Commissioner to accept as controlling Dr. Imber's opinion (see Doc. 17 at 21–23), the argument must fail. As previously discussed, the Commissioner cannot be required to accept as controlling Dr. Imber's conclusory opinion that Plaintiff is "disabled." Thus, the relief Plaintiff seeks (specifically, "that the [c]ourt accept [Dr. Imber's opinion that Plaintiff is 'disabled'] as a matter of law" (*see* Doc. 17 at 23)) is not available. Indeed, the case cited by Plaintiff in support of this request for relief, Elam, is inapposite. There, the court found that failure to provide "explicit and adequate" reasons for rejecting the opinion of a treating physician requires the Commissioner to accept the opinion as true. Elam, 921 F.2d at 1217. But here, the ALJ explicitly and adequately explained his reasons for rejecting Dr. Imber's opinion. Plaintiff, therefore, is not entitled to relief on this claim.

C.      Finding That Plaintiff Could Return to His past Relevant Work

As his final ground for relief, Plaintiff argues that he never performed the job of computer programmer and that the ALJ therefore erred at step four in finding that he could perform past relevant work as a computer programmer (Doc. 17 at 15). The court need not decide, however, whether the ALJ erred in finding that Plaintiff's past relevant work included that of a computer programmer. Any error at step four is harmless because the ALJ also found that Plaintiff could perform other work available the national economy (Tr. 25–26). *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's erroneous consideration of certain past work of claimant deemed harmless where ALJ applied correct legal standards, and his decision would not change had the work not been considered); Brueggemann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003) (the harmless error inquiry involves determining "whether the ALJ would have reached the same decision denying

benefits, even if he had followed the proper procedure . . . .").  As previously noted, when presented with the ALJ's RFC findings in a hypothetical question that included all of Plaintiff's credible impairments, the VE testified that such an individual could perform the sedentary jobs of data exam clerk and data entry clerk (Tr. 628–29), in addition to job of a computer programmer.  The ALJ properly relied on the VE's testimony in concluding that Plaintiff could perform any of the work identified by the VE.  *See* <u>Ingram</u>, 496 F.3d at 1270.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this <u>19</u><sup>th</sup> day of January 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**